LTL ATTORNEYS LLP
  Eugene L. Hahm (Bar No. 167596)
  Jennifer S. Jung (Bar No. 302491)
601 Gateway Blvd., Suite 1010
South San Francisco, CA 94080
Telephone: (650) 422-2130
Facsimile: (213) 612-3773
Email: eugene.hahm@ltlattorneys.com
       jenny.jung@ltlattorneys.com

Attorneys for Plaintiffs
Oracle America, Inc. and Oracle International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation<br><br>Plaintiffs,<br><br>v.<br><br>COGENT COMMUNICATIONS, INC., a Delaware corporation, and DOES 1 through 10,<br><br>Defendants. | CASE NO.: 3:16-cv-4828<br><br>**COMPLAINT FOR:**<br><br>1. **COPYRIGHT INFRINGEMENT;**<br>2. **BREACH OF LICENSE AGREEMENT; AND**<br>3. **BREACH OF MAINTENANCE AGREEMENTS.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Oracle America, Inc. and Oracle International Company complain of Defendant Cogent Communications, Inc. and allege as follows:

**PARTIES**

1. Plaintiff Oracle International Corporation ("OIC") is a California corporation, with its only place of business in Redwood City, California. OIC owns and licenses certain intellectual property, including copyrighted enterprise software programs used around the world. Intellectual property rights formerly held by certain Siebel Systems, Inc. ("Siebel") entities were transferred to OIC as part of Oracle's acquisition of Siebel. OIC is the owner of the copyrights and enterprise software at issue in this action.

2. Plaintiff Oracle America, Inc. ("Oracle America") is a Delaware corporation with its principal place of business in Redwood City, California. Oracle America develops and licenses certain intellectual property, including enterprise software programs and related services. Oracle America licenses the enterprise software at issue in this action, including the Siebel Customer Relationship Management application.

3. Plaintiffs OIC and Oracle America shall be referred hereinafter as "Oracle."

4. On information and belief, Defendant Cogent Communications, Inc. ("Cogent") is a Delaware corporation with its headquarters located at 2450 N Street NW Washington, DC 20037. Cogent is authorized to do business throughout the state of California and conducts business in San Mateo County.

5. The true names or capacities of defendants named herein as DOES 1 through 10 are presently unknown to Oracle. Therefore, Oracle sues said defendants by such fictitious names and will amend this Complaint to show their true names and capacities when the same have been ascertained. Oracle is informed and believes, and on that basis alleges, defendants sued as DOES 1 through 10, and each of them, are liable in whole or in part for the wrongful acts alleged herein.

6. Oracle is informed and believes, and on that basis alleges, that at all relevant times mentioned in this complaint, defendants, and each of them, were acting in concert and active participation with each other in committing the wrongful acts alleged herein, and were the agents

of each other and were acting within the scope and authority of that agency and with the knowledge, consent and approval of each other.

**JURISDICTION AND VENUE**

7. This action arises under the copyright laws of the United States, Title 17, *United States Code* and for a related breach of contract action. The jurisdiction of this Court is based upon 28 U.S.C. § 1331, 17 U.S.C. § 502, and 28 U.S.C. § 1367.

8. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claim and the actual harm to Oracle occurred in this District by reason of Cogent's conduct as alleged below. Venue is proper in any judicial district in which any defendant would be amenable to personal jurisdiction. Cogent is subject to the personal jurisdiction in this District as a result of the following: (i) Cogent's intentional and willful continued infringement of the copyrighted material owned by Oracle; (ii) Cogent's knowledge that Oracle resided in and had its principal place of business in this District; (iii) Cogent's knowledge that the injury would be likely to be suffered in this District; and (iv) Cogent conducts or solicits business within this District, has targeted this jurisdiction with the conduct giving rise to this action, and has availed itself of the privilege of doing business in this jurisdiction.

**INTRADISTRICT ASSIGNMENT**

9. This action alleges, among other things, claims for copyright infringement. It is an intellectual property action and may be assigned on a district-wide basis pursuant to Civil L.R. 3-2(c).

**FACTS GIVING RISE TO THIS ACTION**

10. Oracle develops and licenses business intelligence and enterprise software. Oracle licenses highly sophisticated programs that enable organizations to organize and deliver large amounts of mission-critical data to be reviewed by significant user communities, be they employees or customers of such organizations.

11. On or about January 31, 2006, Oracle Corporation, the corporate parent of OIC and Oracle America, acquired Siebel. Siebel develops and licenses, among other things, business

applications software for front-office business applications. Oracle's Siebel applications enable organizations to manage their customer, partner, and employee relationships, analyze customer data, and execute customer-focused business processes.

12. As part of its acquisition by Oracle Corporation, Siebel transferred its interests, rights, privileges, duties, and obligations of agreements between Siebel and its licensees and resellers to Oracle Corporation. By virtue of the acquisition, OIC became the exclusive owner of all copyrights at issue in this action and via certain intercompany agreements, Oracle America now stands in the shoes of Siebel, the original licensor under the software license agreement with Cogent described below.

13. Oracle as successor-in-interest to Siebel, holds all right, title, and interest in copyrights covering Siebel's software.

14. In or around August 2000, Cogent entered into an end-user license agreement (the "License Agreement") with Siebel through BroadPoint Technologies, an authorized reseller of Siebel products, pursuant to which Cogent licensed certain Siebel programs, including the Siebel Sales Mid-Market Edition (the "Licensed Mid-Market Edition Software").

15. On information and belief, the License Agreement provided Cogent with a non-exclusive license to, among other things, use the Licensed Mid-Market Edition Software for 60 named users. A named-user license restricts the number and identities of the individuals that are authorized to use the subject software. Under such a license, the specific individuals authorized to use the licensed software are identified by a specific user identification or name. A named-user license differs from a concurrent-user license, which allows a specific number of individuals to use the software concurrently, but does not specify that only previously identified users may access the software.

16. As consideration for the rights granted under the License Agreement, Cogent was obligated to pay Siebel for its use of the Licensed Mid-Market Edition Software on a per-user basis.

17. On or about November 2004, Cogent and Siebel entered into a Maintenance Agreement for the Licensed Mid-Market Edition Software under which Cogent warranted that the following constituted a complete listing of all the software programs licensed by Cogent:

- 60 Named Users for the Licensed Mid-Market Edition Software;
- 60 Named Users for Siebel Advanced Automation 2000;
- 1 Named User for Siebel Advanced Sales 2000;
- 1 Named User for Siebel Tools, MME 2000; and
- 1 Named User for Siebel Database Extension 2000.

Cogent acknowledged that no more than 60 named users were permitted to access the Licensed Mid-Market Edition Software. Cogent renewed its Maintenance Agreements with Siebel, and then Oracle, on an annual basis for each year from 2004-2014 ("Maintenance Agreements"). Each of those Maintenance Agreements repeated the same representations about the number of named users permitted to access the Licensed Mid-Market Edition Software.

18. In April 2014, at a meeting held at Cogent's offices involving Oracle sales representatives, several Cogent directors, and Cogent's Vice President of Sales Planning and Analysis, Cogent stated that it had over 350 employees who were using Siebel's CRM Enterprise Edition Software (the "Unlicensed Enterprise Software"), a more robust and expensive Siebel product than the Licensed Mid-Market Edition Software. Cogent had no license to download, access, or use the Unlicensed Enterprise Software.

19. On or about August 6, 2014, Oracle sent Cogent a letter requesting that Oracle's License Management Services team conduct an audit of Cogent's use of Oracle's Siebel software to determine whether Cogent was in compliance with the License Agreement.

20. In late February 2015, following communications between Oracle's in-house counsel and Cogent's in-house counsel, Cogent agreed to an audit by Oracle's License Management Services team.

21. In or around April 2015, members of Oracle's License Management Services team conducted an audit of Cogent's use of Oracle's Siebel software. During that audit, Cogent personnel provided a demonstration of its use of Oracle's Siebel software. This demonstration

confirmed that Cogent had downloaded, installed, reproduced, displayed and was using the Unlicensed Enterprise Software, and not the Licensed Mid-Market Edition Software. Also, the number of Cogent users far exceeded 60 named users.

22. On April 23, 2015, Cogent's Director of Global Information Technology sent an email to Oracle attaching "two spreadsheets from the Siebel auditing that [Cogent has] had running internally." The first spreadsheet—"an hourly capture of how many active users accounts [Cogent has] logged into Siebel"—confirmed that the number of users "generally seems to peak at about 300 concurrent users." The second spreadsheet—which contained a list of all unique user accounts since February 13, 2014—revealed that the number of active and unique Cogent users of Oracle's Siebel's software exceeded 400 users.

23. The audit results revealed not only that the number of Cogent users far exceeded the authorized 60 named users for the Licensed Mid-Market Edition Software, but also that Cogent had downloaded and installed, and that its 400+ users had accessed, the Unlicensed Enterprise Software, for which Cogent had no license.

24. The Licensed Mid-Market Edition Software is less expensive than the Unlicensed Enterprise Software because it has more limited functionality. If it wanted to access and use the Unlicensed Enterprise Software, Cogent would have had to pay additional money. Instead, Cogent downloaded and used this software with no license whatsoever.

25. Thereafter, in order to resolve the outstanding issue of Cogent's noncompliance, Cogent and Oracle representatives negotiated and agreed that Cogent would purchase 435 user licenses for the Unlicensed Enterprise Software and that Cogent would pay $2,105,817.54 to Oracle. This sum represented a substantial discount from the list price for these user licenses of the Unlicensed Enterprise Software. This agreement was commemorated in a May 31, 2015 Ordering Document. Upon information and belief, Cogent's CEO refused to sign the Ordering Document.

26. In June 2015, Cogent notified Oracle that it would be transitioning from Oracle's Siebel software to the software of another service provider.

27. The full extent of Cogent's breaches of the License Agreement and copyright infringement is unknown to Oracle at this juncture. As of the date of this Complaint, Oracle is unaware whether Cogent has ceased using Oracle's Siebel software.

## FIRST CLAIM FOR RELIEF

## COPYRIGHT INFRINGEMENT

### (By OIC Against All Defendants)

28. OIC repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 27 above as though fully set forth herein.

29. OIC owns valid and enforceable copyrights in all of its software, including Siebel software, which are creative works of original authorship.

30. Defendants have reproduced, displayed, and distributed unauthorized copies of Oracle's Siebel software, including but not limited to the Licensed Mid-Market Edition Software and the Unlicensed Enterprise Software (collectively, the "Copyrighted Works"). Such unauthorized copies and use exceed the permissible license terms and therefore constitute unlawful reproductions of Oracle's Copyrighted Works.

31. Defendants' acts violate the exclusive rights of OIC as the copyright holder to reproduce, display and distribute the Copyrighted Works, which have been registered with the United States Copyright Office, and to create derivative works from them, as set forth in 17 U.S.C. § 106.

32. OIC is informed and believes and thereon alleges that the infringement of OIC's copyrights was willful, reckless, and/or in blatant disregard for OIC's rights as a copyright holder, and as such, OIC claims willful, exemplary and enhanced statutory damages, and/or a preclusion from claiming certain deductions or other benefits during the calculation of damages.

## SECOND CLAIM FOR RELIEF

## BREACH OF LICENSE AGREEMENT

### (By Oracle America Against Defendant Cogent)

33. Oracle America realleges and incorporates by reference paragraphs 1 through 32 above as though fully set forth herein.

34. The License Agreement constitutes a writing to which Defendant Cogent was a party and through which Siebel (and subsequently Oracle America) provided Cogent with a limited license to use, distribute and copy the Licensed Mid-Market Edition Software.

35. Oracle America fulfilled all of its obligations under the License Agreement that were not excused by Cogent's actions.

36. Under the License Agreement, Cogent was authorized to allow only 60 named users to use the Licensed Mid-Market Edition Software.

37. Instead, Cogent exceeded the scope of the License Agreement and failed to pay the licensing fees owed for the excessive and unlicensed use of Oracle's Siebel software. Cogent breached the terms of the License Agreement by:

- Making unauthorized copies of the Copyrighted Works.
- Exceeding the number of named users permitted to access the Licensed Mid-Market Edition Software.
- Failing to pay for the unlicensed use, copying, distribution, reproduction, and deployment of the Licensed Mid-Market Edition Software.

38. Oracle America has been harmed by Cogent's ongoing breach of its License Agreement and is entitled to monetary damages in an amount to be determined at trial, but in excess of the jurisdictional requirements of this Court.

### THIRD CLAIM FOR RELIEF

### BREACH OF MAINTENANCE AGREEMENTS

### (By Oracle America Against Defendant Cogent)

39. Oracle America realleges and incorporates by reference paragraphs 1 through 38 above as though fully set forth herein.

40. The annual Maintenance Agreements constitute writings to which Defendant Cogent was a party and through which Siebel (and subsequently Oracle America) provided Cogent with certain maintenance and support of Cogent's use of the Licensed Mid-Market Edition Software.

41. Oracle America fulfilled all of its obligations under the Maintenance Agreements that were not excused by Cogent's actions.

42. Under the Maintenance Agreements, Cogent acknowledged and warranted that it held licenses for only 60 named users of the Licensed Mid-Market Edition Software.

43. However, Cogent breached the terms of the Maintenance Agreements by obtaining support from Oracle America for the Unlicensed Enterprise Software, to which Cogent did not have a valid license. Cogent further breached the terms of the Maintenance Agreements by obtaining support for the Licensed Mid-Market Edition Software for a number of users in excess of the 60 named users authorized in the License Agreement and Maintenance Agreements.

44. Oracle America has been harmed by Cogent's ongoing breach of its Maintenance Agreements and is entitled to monetary damages in an amount to be determined at trial, but in excess of the jurisdictional requirements of this Court.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

# **PRAYER FOR RELIEF**

Wherefore, Oracle prays for judgment in its favor against Defendants as follows:

A. That the Court award Oracle all damages associated with each cause of action asserted in this complaint, including incidental and consequential damages flowing from Defendants' conduct.

B. Statutory damages pursuant to 17 U.S.C. § 504;

C. Costs of suit and attorneys' fees, pursuant to 17 U.S.C. § 505;

D. Prejudgment interest;

E. And that Oracle be granted such other and further relief as the equities of the case may require and as this Court may deem just and proper under the circumstances.

DATED: August 22, 2016          LTL ATTORNEYS LLP

By *[signature: Eugene J. Hahm]*
Eugene L. Hahm
Jennifer S. Jung
Attorneys for Plaintiffs
Oracle America, Inc. and Oracle International Corporation

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs Oracle America, Inc. and Oracle International Corporation hereby demand a jury trial on all issues triable by a jury.

DATED: August 22, 2016        LTL ATTORNEYS LLP

By _____
Eugene L. Hahm
Jennifer S. Jung
Attorneys for Plaintiffs
Oracle America, Inc. and Oracle International Corporation